### DUELL v. BREWER et al.
### No. 443.

Circuit Court of Appeals, Second Circuit.
Decided Aug. 2, 1937.

Hurlbert McAndrew, of Larchmont, N. Y., for appellant.

Greenbaum, Wolff & Ernst, of New York City (David H. Moses, of White Plains, N. Y., of counsel), for appellees.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

### L. HAND, Circuit Judge.

This is an appeal from a decree in equity dismissing a bill for insufficiency upon its face; every intendment must be taken in its favor, and if any relief whatever was possible, the cause should have gone to trial. The gist of the bill is as follows. The three corporate defendants are banks, called for convenience, the "Trust Company," the "Old Bank" and the "New Bank"; the plaintiff is the trustee in bankruptcy of a stock corporation organized under the laws of New York. Those of the individual defendants, who succeeded below and whom the appeal concerns, were directors and shareholders of the "Trust Company" and the "Old Bank." The "Trust Company" was organized under the banking laws of New York, which forbad it to lend to any one borrower more than ten per cent. of its capital and surplus, and directed it to maintain stipulated cash reserves. It lent too much to the bankrupt, and failed to maintain the reserves; and some of the defendants-appellees abetted these violations, and thus became liable to creditors of the "Trust Company" for all resulting damages. The "Old Bank" was a national bank and it lent more than its capital, contrary to section 82 of title 12 U.S.Code (12 U.S.C.A. § 82); and more than ten per cent. of its capital and surplus to the bankrupt, contrary to section 84 of the same title. Others of the defendants-appellees abetted these violations, and they too became liable to the creditors of the "Old Bank" for all resulting damages. The defendants-appellees were also shareholders of the two banks, both of which have become insolvent; as such they are liable to the creditors. On twelve differ-ent occasions between October 15, 1931, and March 22, 1932, the bankrupt assigned accounts payable, either to the "Trust Company," or the "Old Bank," the proceeds to be applied upon its indebtedness; the bank knew in each case that the bankrupt was insolvent, both in the sense that it had failed to pay its debts in due course, and that its assets were less than its liabilities. The bankrupt kept control over these accounts and was allowed to use, and did use, some of their proceeds in its business. The assignments were without consideration and for other reasons fraudulent conveyances. Thus they at once were preferences under section 15 of the New York Stock Corporation Law (Consol.Laws, c. 59), and fraudulent conveyances under sections 67 and 70 of the Bankruptcy Act (as amended, 11 U.S.C.A. §§ 107, 110). The case against the defendants-appellees, as directors and shareholders, is based upon the fact that they had "demanded" and actively procured the assignments to their bank, and this they did for the purpose of relieving themselves pro tanto of their liabilities to the creditors of that bank, either as directors or as shareholders. The defendants-appellees moved to dismiss the bill as to themselves; the court dismissed it and the plaintiff appealed.

The bill stated a good case against the "Trust Company" and the "Old Bank" for a preference under section 15 of the New York Stock Corporation Law; and the plaintiff does not seek to stand upon section 60b of the Bankruptcy Act (as amended, 11 U.S.C.A. § 96(b). The directors were the active persons in procuring all the transfers and had full knowledge of the bankrupt's insolvency; and if taking a preference were a tort, they would be liable, just as the directors of a company are liable for any other torts which they procure it to commit. But preference is the creature of statute, whether under the Bankruptcy Act or the New York Stock Corporation Law; and the only resulting liabilities are those which the statutes declare. Section 60b of the Bankruptcy Act enacts that the trustee may recover from the "person receiving it or to be benefited thereby * * * the property or its value." This is inconsistent with the notion that one person who is the active means in procuring another to obtain a preference is liable in damages. National Bank of Newport **v.** National Herkimer County

Bank, 225 U.S. 178, 184, 32 S.Ct. 633, 56 L.Ed. 1042; Carson v. Federal Reserve Bank, 254 N.Y. 218, 172 N.E. 475, 70 A.L. R. 435; Page v. Moore (D.C.) 179 F. 988; Eyges v. Boylston Nat. Bank (D.C.) 294 F. 286. Moreover, courts have generally held as to fraudulent conveyances that a person who assists another to procure one, is not liable in tort to the insolvent's creditors. Adler v. Fenton, 24 How. 407, 16 L.Ed. 696; Austin v. Barrows, 41 Conn. 287; Wellington v. Small, 3 Cush. (Mass.) 145, 50 Am.Dec. 719. In Pennsylvania the rule is otherwise. Mott v. Danforth, 6 Watts, 304, 31 Am.Dec. 468; Penrod v. Mitchell, 8 Sarg. & R. 522. The reasons ordinarily given are the impossibility of proving any damages, which scarcely seems sufficient; but the result is settled, at least for us. A fortiori must the doctrine be true for a preference. We conclude therefore that under section 15 of the New York Stock Corporation Law, the liability of one who takes active part in procuring a preference does not extend to any damages suffered by the insolvent's creditors. Nevertheless, he must be liable for any part of the property which he actually receives just as he would be under section 60b of the Bankruptcy Act; the transferee is a constructive trustee and by hypothesis the abettor has received part of the res from him with notice of the trust.

The question still remains whether this liability extends to indirect benefits received—for instance, by the discharge of an obligation. Hughes, J., National Bank of Newport v. Herkimer Bank, supra, 225 U.S. 178, at page 184, 32 S.Ct. 633, 56 L. Ed. 1042, thought that if the transferee directed the property to be turned over to his creditor, he would be as much liable as though he received it himself, and clearly that must be so. Similarly, if a creditor of the transferee joins with the transferee to secure the preference, and receives it in discharge of the debt, he must be liable, at least to the extent that the transferee cannot respond. He has received it with notice of the trust, and, though a purchaser, is not a bona fide purchaser. Whether he would be liable for the whole amount, or only for so much as the trustee could not collect from the transferee, we need not decide; the difference is only one of procedure, because if liable in full in the first instance he could prove against the transferee upon his original debt, which would then be unpaid. In the case at bar the directors were not creditors of the banks, but they were liable to its creditors, or to the banks, or to both, for the various statutory violations in which they had participated. So far as the assignments reduced these liabilities they benefited, and they became liable to the plaintiff to the extent that the bank's assets will not satisfy any judgment he may get. When, for example, the bank lent to the bankrupt more than ten per cent. of its capital and surplus, the directors became liable for so much of the excess as the bankrupt would have been unable to pay, if the debt were still outstanding and unpaid. The assignments relieved them pro tanto of that liability and they are liable to the plaintiff so far as they did. The other liabilities are differently measured, but it is not necessary to work them out in detail. The principle in each case is what we have said. As to the liability of the defendants as shareholders, that depends upon how much the assignments reduced the amount for which they could be assessed. If they can be assessed for the full amount even with the preferences retained, they have not benefited at all. The bill did not, it is true, allege that the assignments in fact discharged the defendants of any liabilities, and it may be urged that we should not supply that omission. Nevertheless, it did allege that the defendants-appellees procured them for the purpose of discharging themselves, and upon motion to dismiss, we may imply the allegation that the intent was fulfilled; that is the general purport of the bill. It was also framed on the theory that the assignments were fraudulent transfers in which the defendants-appellees were also abettors. We cannot see that this presents any different issues; the question still would be how far they benefited. Enough was alleged to bring the assignments within Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991; but otherwise the allegations were insufficient to make out a charge of fraudulent transfers.

Decree reversed; cause remanded.