FORUM INSURANCE COMPANY, an Illinois corporation, Plaintiff,

v.

DEVERE LIMITED, et al., Defendants.

No. CV 97–9386 NM RCX.

United States District Court, C.D. California.

Jan. 2, 2001.

Michael F. Perlis, Judith L. Anderson, Alan Z. Yudkowsky, Stroock Stroock & Lavan, Los Angeles, CA, Robert Lewin, Stroock Stroock & Lavan, New York City, for plaintiff.

Robert C. Baker, Jeffrey P. Nolan, Baker Keener & Nahra, Santa Monica, CA, Thomas M. Comparet, Thomas M. Comparet Law Offices, Los Angeles, CA, for Devere Limited, Ephraim P. Kranitz, Thomas Comparet, Jerome Eglin, Jeja Investments, AYK,. Inc., defendants.

E. Sean McLoughlin, Hill Farrer & Burrill, Los angeles, CA, Connie M. Teevan, James Michael Matthews, Rogers Joseph O'Donnell & Phillips, San Francisco, CA, for Harrington Trust Limited, defendant.

ORDER GRANTING DEFENDANT EGLIN'S MOTION FOR SUMMARY JUDGMENT

MANELLA, District Judge.

I. INTRODUCTION

On December 19, 1997, Forum Insurance Company ("Plaintiff") initiated this

action against defendants Devere Limited, Ephraim Kranitz, Thomas Comparet, Jerome Eglin, Jeja Investments, AYK, Inc., OTW Investments, and the law firm Kranitz, Comparet, & Sarrow ("KCS").[1] Plaintiff added Harrington Trust Limited as a defendant in its First Amended Complaint, filed January 22, 1998. Plaintiff's Second Amended Complaint ("SAC") asserts two claims for relief: 1) conspiracy to commit fraudulent transfers in violation of the California Uniform Fraudulent Transfers Act, Cal. Civ.Code § 3439 *et seq.*, and 2) breach of trust against defendant Harrington Trust only.[2] On September 29, 1998, the court issued an order dismissing as time-barred all claims based on transfers committed prior to December 19, 1990. Def.'s Exh. A (Order of Judge Ronald S.W. Lew).

Defendant Eglin ("Defendant") now moves for summary judgment on the grounds that 1) the Uniform Fraudulent Transfers Act ("UFTA"), as embodied in Cal. Civ.Code § 3439.07, offers only equitable remedies and limits recovery to property received via fraudulent conveyance, and 2) Plaintiff cannot show that Defendant received any illegally transferred funds.

## II.  FACTUAL BACKGROUND[3]

The instant action arises from an elaborate scheme engineered by Michael Keele. While on a work-release furlough from prison, Keele created a network of limited partnerships. These partnerships issued fraudulent private placement memoranda and related documents. In reliance on these fraudulent documents, financial institutions, including Plaintiff, issued surety bonds guaranteeing repayment of loans to investors in the partnerships. These bonds obligated the insurers to cover the loans in the event of default by the partnership investors. Plaintiff claims to have lost more than $36 million as a result of this scheme.

During the relevant period, Defendant Eglin was an accountant with the firm Block, Plant & Eglin.[4] Plaintiff alleges that Eglin conspired to conceal Keele's assets for the purpose of defrauding his creditors. SAC ¶ 21. Specifically, Plaintiff charges Eglin with facilitating the illegal transactions by providing documentation and tax advice to Keele and various Keele-related entities, including Devere, AYK, KCS, OTW Investments, the Acton limited partnerships, and OGAPS (the trust administered by Harrington for the benefit of Keele's daughters). Opp., at 5–6; SAC ¶ 33. Eglin admits that he advised Keele about the tax consequences of consulting fees he received from Devere. Eglin Depo., at 55:5–25; *accord* Kranitz Depo., at 141:10–14. It is also undisputed that Defendant provided accounting and tax preparation services to Devere and other entities. Reply, at 3; *accord* Kranitz Depo., at 167:5–24.[5] However, Defendant maintains that he exercised no "bookkeeping, management, [or] decision making," authority over any of the Keele-related entities. Reply, at 3. This is confirmed by Ephraim Kranitz, a co-defendant who served as Keele's attorney and

---

1.  On December 4, 1998, Plaintiff dismissed Defendants OTW Investments and Kranitz, Comparet & Sarrow from the case.

2.  In an order dated January 25, 1999, the court dismissed the breach of trust claim against Harrington Trust.

3.  Unless otherwise noted, the following facts are undisputed.

4.  Defendant also was a limited partner in the Acton Estates project. Eglin Depo., at 78:20–22; SAC ¶ 72.

5.  Defendant received $1,550 in fees from Devere for his tax return preparation services. Def.'s Statement of Uncontroverted Facts, no. 18 [hereinafter SUF]. Plaintiff does not allege that these fees were wrongfully obtained. SUF, no. 16.

an officer of Devere. *See* Kranitz Depo.; at 704:12–705:7.

Plaintiff further alleges that Eglin "received a finder's fee of approximately $15,000 for locating investors for Action I and Action II." SAC ¶ 72. However, Plaintiff submits no evidence to support its claim that these funds were fraudulently transferred. Pl.'s Response to SUF no. 9 ("Forum has not obtained any documentary evidence through discovery indicating that Eglin received any fraudulently transferred funds."). The $15,000 commission is the only transfer Defendant is alleged to have received. SUF, no. 15.

Plaintiff entered into a stipulated $6 million judgment with Keele June 3, 1993, and now seeks to recover its losses from all Defendants.

## III.  DISCUSSION

### A.  *Summary Judgment Standard*

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corporation v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

In a trilogy of 1986 cases, the Supreme Court clarified the applicable standards for summary judgment. *See Celotex,* 477 U.S. 317, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industry Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d

538 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The governing substantive law dictates whether a fact is material; if the fact may affect the outcome, it is material. *See id.* at 248, 106 S.Ct. 2505. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, it must satisfy its burden with affirmative, admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The moving party need not disprove the other party's case. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

When assessing whether the non-moving party has raised a genuine issue, the court must view the evidence in the light most favorable to the non-movant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress and Company,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient to create a genuine issue of material fact. *Id.* at 252, 106 S.Ct. 2505. As the Supreme Court explained in *Matsushita,*

> [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt

as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

475 U.S. at 586–87, 106 S.Ct. 1348 (citations omitted).

To be admissible for purposes of summary judgment, declarations or affidavits must be based on personal knowledge, set forth "such facts as would be admissible in evidence," and show that the declarant or affiant is competent to testify concerning the facts at issue. Fed.R.Civ.P. 56(e). Declarations on information and belief are insufficient to establish a factual dispute for purposes of summary judgment. *See Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).

### B. *Application*

Plaintiff alleges that Defendant participated in a conspiracy to violate UFTA. Compl. ¶¶ 81–82; Opp., at 17.[6] Defendant contends that UFTA provides only equitable relief and limits Plaintiff's recovery to assets received by a transferee. Mot., at 6. Plaintiff counters that it is not limited by the remedies set forth in Cal. Civ.Code § 3439.07(a), because it is not asserting a statutory fraudulent conveyance claim but a common law conspiracy claim for which damages are available.

■■ A creditor suing for relief under UFTA may obtain the following remedies:

(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

(2) An attachment or other provisional remedy against the asset transferred or its proceeds....

(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure ...

(A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or its proceeds.

(B) Appointment of a receiver to take charge of the asset transferred or its proceeds.

(C) Any other relief the circumstances may require.

Cal. Civ.Code § 3439.07(a). Terms such as "liability" and "damages" do not appear in the statute. *Cf. Mack v. Newton,* 737 F.2d 1343, 1360 (5th Cir.1984) ("The Texas [fraudulent conveyance] statute does not purport to do anything other than render the transfer 'void' with respect to designated persons.... The statute contains no words such as 'damages' or 'liability' or 'actionable.' "). Thus, by its terms, UFTA allows only equitable remedies such as avoidance, attachment, an injunction, or appointment of a receiver. Upon finding an UFTA violation, the court may cancel the transfer or impose a lien against the transferred property, but it may not award damages. *See FDIC v. White,* 1998 WL 120298, at *2 ("Equity may require, and the statute may allow, the Court flexibility in fashioning remedies, but ... this flexibility [does not] include fashioning substantive rights of action with accompanying damages which are not otherwise implied or stated in the statute.").

■■ A conspiracy claim does not expand the remedies afforded by UFTA.[7] Conspir-

---

**6.** Plaintiff bases its conspiracy claim not on the common law, but on UFTA. Opp., at 17 ("the object of the conspiracy is facilitation of a statutory violation of the UFTA").

**7.** This is the rule in the majority of jurisdictions. *See Summers v. Hagen,* 852 P.2d 1165, 1169 (Alaska 1993). The minority rule "allows one who has been legally harmed to recover damages from the party causing the

harm where the existing equitable remedy of voiding the transfer is inadequate." *Id.; accord McElhanon v. Hing,* 151 Ariz. 386, 728 P.2d 256, 263 (1985) (subsequent decrease in value of stock gave rise to action for damages by creditor against fraudulent transferee and coconspirator). Even were the court to adopt the minority rule, Plaintiff would not be entitled to recover damages, as it has made no

acy is a theory of liability, not an independent tort. *See Doctors' Co. v. Superior Court,* 49 Cal.3d 39, 44, 260 Cal.Rptr. 183, 775 P.2d 508 (1989); 5 B.E. Witkin, *Summary of California Law,* Torts § 44. Here, the underlying offense is an UFTA violation. SAC ¶¶ 81–82.[8] In *Elliott v. Glushon,* 390 F.2d 514 (9th Cir.1967), the court limited a bankruptcy trustee's recovery to property received via fraudulent conveyance, reasoning that the anti-fraudulent conveyance provisions of the federal bankruptcy act "were not intended to render civilly liable all persons who may have contributed in some way to the dissipation of those assets.... The legislative theory is cancellation, not the creation of liability for the consequences of a wrongful act." *Id.* at 516; *accord Hassen v. Jonas,* 373 F.2d 880, 884 (9th Cir.1967) ("The effect of the legislative declaration that transfers within the statute are fraudulent is that such transfers are deemed void as to creditors. The transfer being void, a creditor can reach the property as though the transfer had not been made." (citations omitted)).[9]

Similarly, in *FDIC v. White,* 1998 WL 120298, at *2 (N.D.Tex.1998), the court concluded that the Texas UFTA "[did] not create liability on the part of a co-conspirator for fraudulent conveyances to an extent or in an amount beyond property which a co-conspirator actually receive[d] or in which he acquire[d] an interest." Plaintiff argues that *FDIC v. White* is inapposite, because Texas law does not recognize a claim for conspiracy to commit fraudulent conveyance. Opp., at 16. However, like the Ninth Circuit in *Elliott* and *Hassen,* the *FDIC* court based its ruling on the language of the statute and intent of the legislature, not the common law of Texas. *See FDIC v. White,* 1998 WL 120298, at *2 ("Nowhere does the statute imply that recovery could exceed fraudulently transferred property. Nor should the court assume that recovery could be had from anyone not in receipt of such property . . . . .").

Relying on *Durant Software v. Herman,* 257 Cal.Rptr. 200 (1989) (reinstating civil action against attorney for conspiracy to defraud judgment debtor), rev. granted, 260 Cal.Rptr. 265, 775 P.2d 1034 (1989), rev. dismissed, 272 Cal.Rptr. 612, 795 P.2d 782 (1990), and *Packerland Packing Co. v. Griffith Brokerage Co.,* 776 F.2d 802 (9th Cir.1985) (affirming district court's decision to lift stay to permit retrial on damages in case involving conspiracy to commit fraudulent conveyance), Plaintiff maintains that non-transferees are liable for damages in an action for conspiracy. Opp, at 14–15.

Plaintiff's reliance on *Durant Software* and *Packerland Packing* is misplaced. Neither decision addressed the propriety of awarding damages in an action based on UFTA. *Durant Software* held that the statutory privilege for com-

---

showing of inadequacy. Euwema Depo., at 214:16–19 (Keele has agreed to "make specific payments to [Forum] on specific projects within specific time frames."); *id.* at 215:23–216:3 (Forum anticipates receiving $4 million or more from Keele over the next several years.).

8. Defendant concedes that Plaintiff may be entitled to damages if it had asserted a conspiracy claim based on fraud. Mot., at 8; *Elliott v. Glushon,* 390 F.2d 514, 517 (9th Cir.1967) ("state law may well – where actual

fraud was engaged in – allow a damage action in the nature of deceit against any conspirators"); *Mack v. Newton,* 737 F.2d 1343, 1362 n. 25 (5th Cir.1984). However, no such claim has been asserted.

9. The court is not persuaded by Plaintiff's attempt to distinguish *Elliott* on the ground that it involved a trustee action, not a creditor action like the case at bar. Opp., at 13 (citing *In re Hamilton Taft & Co.,* 176 B.R. 895 (Bkrtcy.N.D.Cal.1995)).

munications made in connection with judicial proceedings did not shield the defendant, an attorney, from a charge of conspiring with his client to fraudulently convey the assets of a judgment creditor. 257 Cal.Rptr. at 207.[10] *Packerland Packing* involved claims for conversion and for conspiracy to fraudulently convey assets. 776 F.2d at 803.[11] The appeals court summarily affirmed the district court's decision to lift an automatic stay to permit a retrial on the issue of damages, without discussing whether damages were available on the conspiracy claim.[12]

The only fraudulent transfer Defendant is alleged to have received was a $15,000 commission for finding investors for the Acton limited partnerships. SAC ¶ 72; SUF, nos. 9, 13, 15.[13] Plaintiff admits that there is no evidentiary basis for its claim that this was a fraudulent transfer. Pl.'s Response to SUF no. 9.[14]

In sum, Plaintiff has no remedy against Defendant, because UFTA provides only equitable remedies solely against transferees, and Defendant is a not a transferee.

## IV. CONCLUSION

For the reasons set forth above, this court *grants* Defendant Eglin's motion for summary judgment.

IT IS SO ORDERED.

---

10. The appeals court opinion in *Durant Software* was vacated when the case was accepted for review by the Supreme Court of California. *Durant Software v. Herman,* 260 Cal. Rptr. 265, 775 P.2d 1034 (1989). The California Supreme Court subsequently dismissed the case as moot, because the parties settled. *Durant Software v. Herman,* 260 Cal.Rptr. 265, 775 P.2d 1034 (1989).

11. There is no indication that Packerland's conspiracy claim was based on UFTA.

12. Another panel of the appeals court reviewed the defendant's appeal from a $539,000 judgment in the damages retrial. *See Packerland Packing,* 776 F.2d at 804 n. 3.

13. Defendant admits that he "received a total of $1,550 in tax preparation fees from Devere." Mot., at 17. It is undisputed that such fees do not constitute fraudulent transfers, and are thus not voidable under UFTA.

14. Even if such a transfer took place, any claim based thereon is barred by the statute of limitations. It is undisputed that the Acton I limited partnership was created August 10, 1989, and the Acton II limited partnership was created April 9, 1990. SAC ¶ 72; Mot., at 15; SUF, no. 14. Judge Lew's September 29, 1998 order established a cut-off date of December 19, 1990 for actionable transfers, making any transfers prior to that date time-barred. Def.'s Exh. A; *see also* Cal.Code § 3439.09(c) ("[A] cause of action with respect to a fraudulent transfer or obligation is extinguished if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred."). Therefore, unless Plaintiff can demonstrate that the alleged finder's fee was paid to Defendant several months after the Acton limited partnerships were formed, any claim based on that transaction is a barred by the statute of limitations. As Plaintiff has failed to make such a showing, the court concludes that any claim for violation of UFTA based on the $15,000 commission is time-barred.